**THOMPSON–KISSEL COMPANY,**
Appellant,

v.

**NATIONAL BANKERS LIFE INSURANCE COMPANY, Appellee.**

Court of Appeals of Kentucky.

Nov. 29, 1968.

Rehearing Denied Feb. 7, 1969.

J. D. Raine, Zirkle, Raine & Francis, Louisville, for appellant.

Richard C. Oldham, Dorothy G. Cox, Louisville, for appellee.

EDWARD P. HILL, Judge.

This appeal involves the priority of liens as between appellee's vendor's lien and appellant's execution lien.

Appellant's judgment, on which it secured an execution lien, is for $30,964.20. Appellee's note, secured by purchase money lien, is in the principal sum of $1,408,439.-66.

Prior to December 30, 1959, appellee National Bankers Life Insurance Company

(hereinafter referred to as Bankers) acquired title to a tract of land in Oldham County, Kentucky, known as "Country Club Estate" or "Harmony Lake Subdivision." On the above date, appellee deeded this tract to Webb & Knapp, Inc., retaining a purchase money lien and a note for the unpaid purchase price above mentioned. During the time appellee and its predecessor, Capital Investment Trust Company, owned the subdivision, numerous lots were sold to individuals under written unrecordable and unrecorded contracts providing for monthly payments of the purchase price. The lot purchasers were entitled to deeds upon the payment in full of their contract prices.

On September 17, 1964, Webb & Knapp, Inc. contracted with the appellant, Thompson-Kissel Company, for the construction by the latter of a sewage disposal plant for the subdivision. Appellant's judgment and execution lien grew out of this contract.

On March 3, 1966, appellee filed this action to foreclose its purchase money lien against National Home Owner's Club of Louisville, Inc. and others, including the appellant. By order dated March 31, 1966, the court directed that the lot purchasers, numbering some thirty-seven individuals, be made party defendants.

Appellant argues it knew nothing about the purchase of lots by these individuals until after the suit was filed. And apparently this argument is well taken when it is recognized that lot purchasers had not recorded and could not record their contracts, and had not placed any improvements thereon or exercised any noticeable right of possession during the time appellant was performing its sewage disposal contract.

At the time this suit was filed, the lot purchasers had paid substantial amounts on their respective lots. Some of them had paid in full.

Appellant's theory on this appeal, as stated in its brief, is as follows:

"It is appellant's contention that because the Contracts for Deed were not recorded in the office of the Clerk of the County Court of Oldham County in accordance with K.R.S. 382.270, that its lien, recorded after the recording of appellee's Vendor's Lien, and without knowledge of the existance (sic) of the Contracts for Deed, is prior and superior to the Vendor's Lien of the appellee to the extent of the equity of each purchaser in the property he or she sought to purchase under the Contracts for Deed.

"Thompson-Kissel Company further asserts that, in each instance where the pleadings indicate that a purchaser under a Contract for Deed had paid the full contract sum for his lot or lots, the Vendor's Lien of the appellee was released by operation of law and that the appellee could no longer assert any right to enforce collection of any balance due on its Vendor's Lien on those particular lots."

It should be noted here that it was not until January 23, 1967, that appellant offered an "Amended Answer and Counterclaim" presenting the argument or theory it now argues on this appeal. The trial court overruled appellant's motion to file this amendment. This offered amendment did not contain a cross-claim against the numerous lot purchasers. Furthermore, the lot purchasers were not made parties to this appeal. In fact, the trial court did not enter any order or judgment pertaining to the claims of the lot owners, although they filed separate answers and cross-petitions against appellee.

Appellant's answer and counterclaim alleged certain assignments and reassignments of Webb & Knapp's note satisfied Bankers' vendor's lien. We find this issue without merit.

The question on this appeal is whether somehow, or by equitable principles, appellant's second lien can take priority over Bankers' vendor's lien.

The trial court first caused the tract to be sold exclusive of the lots, and Bankers became the purchaser. Later the court directed a sale of the lots, first separately

and then as a whole, which resulted in Bankers' being the highest bidder ($46,-000). The aggregate of Bankers' two bids was less than its debt.

Although appellant did not perfect a lien under the statute, we consider with understanding and sympathy the argument that nevertheless it should have a lien prior to Bankers' vendor's lien to the extent of lot purchasers' equities. But before a vendor's lien may be supplanted by a second lien, there must be some unjust or inequitable act or conduct on the part of the vendor, or some other person whose acts are chargeable to the vendor, sufficient to justify such a drastic result. Certainly it cannot be said that Bankers' procedural course was irregular or unusual or that its bidding in the property was prejudicial to appellant. Appellant submitted no bid. Appellant was not misled by the fact that lots were sold; neither did appellant know of or rely on the lot owners' equities.

The position of Bankers has not been improved by the course this litigation has followed. It had a vendor's lien on the entire tract, including the lots, to secure its vendor's lien.

If we should hold that appellant's second lien is prior to Bankers' vendor's lien, Bankers would be required under the present state of the record to pay over to appellant its debt, interest, and costs, which in reality represents that amount of the lot owners' equities. This result cannot be reached for the simple reason that Bankers has committed no act contrary to the usual procedure for the foreclosure of a vendor's lien. The fact that Bankers was obligated to lot purchasers to either give them deeds or return their money was sufficient justification for Bankers to join in with lot purchasers in asking for a sale of all lots. Before the sale, Bankers was unable to make deeds to lot purchasers for the obvious reason it did not have title.

We can detect no logical, legal, or equitable reason for jeopardizing the vendor's lien under the circumstances. The contracts between Bankers and lot purchasers were side arrangements, which did not result in vesting in appellant a greater equity than Webb & Knapp enjoyed.

The numerous cases cited by appellant on the question of innocent purchasers without notice appear to be sound law as between it and the lot purchasers, but are of no help as against Bankers. This is not a controversy between Thompson-Kissel and lot purchasers. The latter, as noted above, are not parties on this appeal, and Thompson-Kissel's answer was not made a cross-claim against lot purchasers.

Thompson-Kissel did not bid in the property. The sale cleared the property of all liens, and the parties must look to the funds (proceeds of sale) for the satisfaction of their liens. Of course, there has been no actual money paid into court by Bankers, representing its bid of $46,000, as the court authorized it to have credit on its debt and purchase money lien. However, that is not material. Had Bankers paid cash, none of it would have gone to appellant. Clearly Bankers' lien must take priority over the execution lien.

Appellant argues that when lot purchasers paid for their lots, Bankers' lien was satisfied by operation of law and no release of record is necessary. Ordinarily this result may be reached, but as Bankers' lien covered the subdivision in its entirety, Bankers was not required to release its lien piecemeal. Bankers also owed a duty to lot purchasers to obtain title again so it could perform its contract with them by giving them deeds on payment of the full amounts of their contract prices. To that extent, it could be said that the lien of Bankers was held and exercised for the benefit of the lot purchasers to whom it was obligated.

Any result other than that herein reached would operate to defeat a vendor's lien, in a substantial amount, which should not be done without just legal or equitable reason.

The judgment is affirmed.

All concur.